J-S43028-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| IN THE INTEREST OF N.J., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: B.J. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 191 WDA 2018 |

Appeal from the Order January 5, 2018
In the Court of Common Pleas of Allegheny County Orphans' Court
at No(s):  CP-02-AP-127-2017

BEFORE:  STABILE, J., DUBOW, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.:                    FILED NOVEMBER 30, 2018

B.J. (Mother) appeals from the order granting the petition of the Allegheny County Office of Children, Youth, and Families (CYF) to terminate her parental rights to her son, N.J. (Child), born in October of 2014, pursuant to Section 2511(a)(2), (5), (8), (9), and (b) of the Adoption Act, 23 Pa.C.S. § 2511.[1]  We affirm.

We adopt the following facts and procedural history from the trial court's findings of fact, which are supported by the record and the notes of testimony. See Order, 1/5/18, at 1-5.

---

[1] The father of Child is unknown.  See Order, 1/5/18, at 1-5.  Mother named F.C., the father of Child's half-sibling as a potential father, but F.C. denied paternity of Child and has not attended any court hearing or had any contact with Child.  Id.  F.C. was ordered to submit to genetic testing but refused to comply.  Id.  At the termination hearing, the parental rights of F.C. and any unknown father were also terminated.  Neither F.C. nor any other party has appealed, and they are not parties to the instant appeal.  Id.

Mother has three children: son T.J., born in December of 2009; Child; and daughter A.J.[2] The family has been involved with CYF since July of 2012. The contact leading to the instant matter occurred in October of 2015, following allegations of Mother's physical abuse of T.J. and Mother's subsequent commitment to the psychiatric ward at a local hospital. T.J. suffered bruising on both sides of his head and on his face. Mother, who was pregnant, tested positive for marijuana. T.J. and Child were removed from Mother's care following the incident and Mother's commitment. Mother was discharged from the hospital with recommendations to attend prenatal care and continue with outpatient mental health services. She has a history of homelessness, drug abuse, and mental health instability.

In December of 2015, Child was adjudicated dependent following the court's finding that the injuries inflicted on T.J. were the result of child abuse. Child has been in care since his removal when he was less than one year old. During that time, he has lived with two separate maternal aunts, in kinship care with a friend of his mother, and in three separate foster homes. Child has been in his current foster home, which is a pre-adoptive home, since October of 2017. Foster parents are supportive of post-adoption contact with Child's biological family. During Child's removal, Mother was awarded supervised visitation at a minimum of three times per week, but did not

_____

[2] A.J.'s age is unclear from the record, but it appears that Mother was pregnant with A.J. at the time of her involuntary commitment.

Child's siblings remain in the care of their respective fathers. Id.

- 2 -

consistently attend. Mother did not visit Child between December of 2015 and February of 2016. Between August of 2016 and October of 2016, Mother attended five of twenty-four scheduled visits.

In October of 2016, Mother pled guilty to aggravated assault of a victim less than six years old, simple assault, endangering the welfare of a child, and recklessly endangering another person,[3] related to the October of 2015 incident involving T.J. She was sentenced to four years' probation and ordered to complete a parenting program and anger management classes, and to comply with her family court orders.

On August 7, 2017, CYF filed a petition seeking to terminate Mother's parental rights. Andrea Spurr, Esq., appeared on Child's behalf.

In September of 2017, Mother tested positive for cocaine and was arrested for a probation violation. She was discharged to inpatient treatment in October 2017 and then to a halfway house. She has been sober since her release. Mother's housing situation, while stable, was also court-ordered. Since being released from incarceration, Mother has attended some supervised visits with Child, who is affectionate with Mother and happy to see her. However, after the visits, Child exhibits a decline in his behavior, including throwing temper tantrums, biting, eating out of the garbage, and playing with his feces. Child refers to both Mother and his foster mother as "mommy" or "mother."

_____

[3] 18 Pa.C.S. §§ 2702(a)(8), 2701, 4304, and 2705, respectively.

A hearing on the petition for involuntary termination was convened January 5, 2018. The Agency presented the testimony of Jennifer Mattey, the caseworker assigned to the family, and Dr. Beth Bliss, a forensic psychologist who had evaluated Child, Mother, and the foster parents. Mother, represented by counsel, testified on her own behalf. Child was represented by Attorney Spurr, who participated in cross-examination of the witnesses.

Dr. Bliss diagnosed Mother with an unspecified personality disorder with borderline traits, an adjustment disorder with mixed anxiety and depressed mood, and noted Mother's historical diagnosis of bipolar disorder with psychotic features. Dr. Bliss opined that Mother's impulsivity, anger, and inability to play with Child would make it difficult for her to parent appropriately. Dr. Bliss also concluded that Mother was not currently in a position to meet Child's needs and welfare due to her personality traits, as well as the facts that her sobriety was recent and she was not receiving appropriate mental health services for her diagnoses.

According to Dr. Bliss, she observed no overtly negative or positive interactions between Mother and Child. However, some of Mother's interactions with Child did not appear natural. Specifically, Dr. Bliss noted that Mother at times would not play with Child but "drilled" him with questions.

At the conclusion of the testimony, Attorney Spurr recommended that the court grant the Agency's petition, noting that Child's needs and welfare

would be best served by termination.[4]  The court granted the petition pursuant

to 23 Pa.C.S. § 2511(a)(2), (5), (8), and (9), and (b).

_____

[4] We address sua sponte whether the representation of N.J. provided by Attorney Spurr satisfies the requirement of 23 Pa.C.S. § 2313(a).  See In re K.J.H., 180 A.3d 411 (Pa. Super. 2018) (holding that this Court must raise sua sponte the issue of child's right to counsel).

Under Section 2313(a), the court shall appoint counsel to represent the child in a contested termination matter.  See 23 Pa.C.S. § 2313(a).  The court may appoint separate counsel or a guardian ad litem (GAL) to represent the child.  Id.  Our Supreme Court has highlighted the distinction between counsel representing the child's legal interests and the GAL representing the child's best interests.  See In re Adoption of L.B.M., 161 A.3d 172, 180 (Pa. 2017) (plurality).  The Court noted that legal interests are synonymous with the child's preferred outcome, but the child's best interests are determined by the court.  Id.  A majority of the L.B.M. Court concluded that permitting the same attorney to serve as legal and best interests counsel should be determined on a case-by-case basis.

Our Supreme Court recently decided In re T.S., 192 A.3d 1080 (Pa. 2018), and held that "where there is no conflict between a child's legal and best interests, [a GAL] representing a child's best interest can also represent the child's legal interest."  T.S., 192 A.3d at 1092.  The Court further held that if the child's preferred outcome cannot be ascertained due to the child's young age, there can be no conflict between the child's legal and best interests.  Id.  In such circumstances, Section 2313(a) is satisfied by the appointment of a GAL who represents the child's best interests.  Id.

This Court has also clarified the requirements counsel must meet in order to provide adequate representation in termination matters.  See In re Adoption of T.M.L.M., 184 A.3d 585, 587-91 (Pa. Super. 2018).  Essentially, the record must reflect that the attorney spoke with the child and ascertained his or her preferences in order to adequately represent them in legal proceedings.  Id.

Here, the certified record does not contain the order appointing Attorney Spurr.  It appears, however, that Attorney Spurr acted as a GAL as she advocated for Child's best interests at the hearing and filed a brief in this appeal arguing that termination served Child's best interests.

On February 2, 2018, Mother contemporaneously filed a timely notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

On appeal, Mother raises a single issue:

Did the trial court abuse its discretion and/or err as a matter of law in concluding that CYF met its burden of proving by clear and convincing evidence that termination of Mother's parental rights would best serve the needs and welfare of the [Child] pursuant to 23 Pa.C.S. § 2511(b)?

See Mother's Brief at 11.

Mother argues that the trial court erred in finding that CYF presented clear and convincing evidence that involuntary termination of her parental rights would best meet the developmental, physical, and emotional needs and welfare of Child. See Mother's Brief at 19. She argues there was evidence of a positive bond between herself and Child, no evidence of risk to Child if her rights remained intact, and that the only change would be the permanent removal of a loving parent from Child's life. Id. at 21-22.

_____

Nevertheless, the record does not reveal a possible conflict between Child's legal and best interests. Child was removed from Mother's care when he was less than one year old. At the time of the hearing, Child was three years old. Although Child was comfortable with Mother during visits and shared some bonds with her, he referred to both Mother and Foster Mother as his mother. CYF presented expert testimony and reports indicating that Child looked to Foster Mother as a primary caretaker. Thus, the record does not reflect that Child was capable of articulating a preference regarding the outcome of the proceeding, or that there was a conflict between Child's legal and best interests. Therefore, we decline to remand this matter. See In re T.S., 2018 WL 4001825, at *10.

We review cases involving the termination of parental rights according to the following standards:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

In re T.S.M., 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

We have explained that termination requires a bifurcated analysis:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

In re L.M., 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted). To affirm, we need only agree with any one of the Subsections of 2511(a), as well as Subsection (b). See In re B.L.W., 843 A.2d 380, 384 (Pa. Super.

2004) (en banc). As Mother does not challenge the trial court's Section 2511(a) findings, we focus our analysis solely upon subsection (b).

Section 2511(b) provides:

(b) Other considerations.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

Pursuant to subsection (b), a court must consider whether the child's needs and welfare will be met by termination. See Z.P., 994 A.2d at 1112. "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." Id. Further,

the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

In re Adoption of C.J.P., 114 A.3d 1046, 1054 (Pa. Super. 2015). We have also noted that

[b]efore granting a petition to terminate parental rights, it is imperative that a trial court carefully consider the intangible

- 8 -

dimension of the needs and welfare of a child—the love, comfort, security, and closeness—entailed in a parent-child relationship, as well as the tangible dimension. Continuity of relationships is also important to a child, for whom severance of close parental ties is usually extremely painful. The trial court, in considering what situation would best serve the child[ren]'s needs and welfare, must examine the status of the natural parental bond to consider whether terminating the natural parents' rights would destroy something in existence that is necessary and beneficial.

Z.P., 994 A.2d at 1121 (citation omitted). However, the court may consider and emphasize other concerns such as safety and stability even where there is the existence of a bond between a biological parent and the child. See In re K.Z.S., 946 A.2d 753, 763 (Pa. Super. 2008) (affirming involuntary termination of parental rights, despite existence of some bond, where placement with mother would be contrary to child's best interests).

Here, the trial court observed that Mother was still under supervision, that she was in court-ordered housing, and that her sobriety was relatively recent. See N.T., 1/5/18, at 158. Mother's mental health diagnoses required long-term treatment to offer stability to Child, and Mother did not show that she was receiving such treatment. Id. The court noted that his pre-adoptive parents encouraged continued contact with his biological family, but that it was in Child's best interests to achieve permanency. Id. Thus, the court concluded it was in his best interests for Mother's rights to be terminated. Id.

We discern no basis to disturb the trial court's conclusion. While there was some evidence that Mother had a positive bond with Child, at the time of the hearing, he had been in care for twenty-seven of his thirty-nine months of his life. Competent evidence of the record showed that Mother does not

parent appropriately and is unlikely to achieve stability within a reasonable time. Further, it was appropriate for the court to emphasize Child's need for stability in light of the evidence that severing the bond between Child and Mother would not cause irreparable harm. See, e.g., In re N.A.M., 33 A.3d 95, 103-04 (Pa. Super. 2011) (noting that termination was appropriate to provide needed stability where mother was incapable of providing it, and termination would not cause irreparable harm).

Thus, we conclude that the clear and convincing evidence of record supports the termination of Mother's parental rights and the Section 2511(b) finding that adoption would best serve Child's needs and welfare. See Z.P., 994 A.2d at 1126-27.

Order affirmed.


Judge Stabile joins the memorandum.

Judge Dubow files a concurring statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/30/2018